IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BALDEMAR HINOJOZA #1419070 | § | |
| | § | |
| V. | § | A-14-CA-324-SS |
| | § | |
| JAMES LaFAVERS, | § | |
| CHARLES SHIPMAN, | § | |
| MARSHA MOBERLY, DENISE | § | |
| WILLIAMS, CHRISTINA PROPES, | § | |
| and BARBRA BURTON | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint and Motion for TRO and Preliminary Injunction. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Montford Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff complains he has been reviewed for parole and mandatory supervision multiple times between 2007 and 2014. Each time, Plaintiff was denied release. Plaintiff claims the denials were based on incorrect information in his parole file. Plaintiff sues James LaFavers, Charles Shipman, Marsha Moberly, Denise Williams, Christina Propes, and Barbra Burton.

According to Plaintiff, Defendants LaFavers, Shipman, and Moberly were the Parole Board Commissioners or Members who reviewed him for parole and mandatory supervision from 2007 until 2014. Specifically, Plaintiff asserts he was reviewed for parole every year from 2007 to 2012, and each year was given a one-year set-off. After his 2013 parole review, Plaintiff asserts he received a "serve all." In addition to being reviewed for parole in 2013, Plaintiff was reviewed for discretionary mandatory supervision. According to Plaintiff, he received notice on March 19, 2013, that the Board decided not to grant him that release and his next review would be in March 2014. Plaintiff asserts on November 1, 2013, he was notified he was under review for discretionary mandatory supervision. On January 27, 2014, Plaintiff allegedly received notice that discretionary mandatory supervision was denied and his next review date was January 2015.

Plaintiff alleges after his 2010 parole review he notified Defendant Burton, the Institutional Parole Officer ("IPO") that the decision to deny him parole was based on falsified, erroneous, and inaccurate information. Plaintiff bases this allegation on the list of standard reasons given for the denial of his parole. In his case, he states the reasons given were "1D, 2D, 9D1, and 9D2." Later in his complaint, Plaintiff complains his parole or mandatory supervision was denied, not based on false information, but rather on "factors which cannot/will-not be altered, modified or rehabilitated." According to Plaintiff, in 2011 he notified Defendant Burton the same erroneous reasons were given to deny him parole. During his 2012 parole review, Plaintiff asserts he asked Defendant Burton to notify her supervisors incorrect information was in his parole file. Defendant Burton allegedly responded, "your parole reviews and the denials were concistant [sic] with the laws that control them." After Plaintiff received his notice on January 27, 2014, that he had been denied discretionary mandatory supervision, he claims he notified Defendant Williams, Program Supervisor III for the

Parole Board, on April 9, 2013, that he had received eight denials of parole or mandatory supervision based on inaccurate, erroneous, and falsified information. Defendant Williams allegedly responded, "said decisions and utilizations were at the discretion of the (TBPP) and/or the additional Defendants hereto, and that their actions were lawful and in the best interest of the safety of society." Plaintiff made similar complaints to Defendant Propes, Section Director of the Parole Board, in March and April 2013. Propes allegedly responded, "will forward your request to the appropriate TDCJ Division to respond to your correspondence."

Plaintiff claims Defendants LaFavers, Shipman, and Moberly violated state tort laws and federal due process when they based their denial of parole or mandatory supervision on false information. Plaintiff faults Defendants Williams, Propes, and Burton for failing to intervene after he notified them of his concern. He similarly claims they violated state tort laws and federal due process.

Plaintiff requests that the Court issue a declaration that Defendants violated the Due Process Clauses of the United States and Texas Constitutions and that the utilization of inaccurate, falsified, and erroneous information in parole reviews violates the parole candidates' rights under the United States and Texas Constitutions. In addition, he seeks a specific declaration that Defendants LaFavers, Shipman, and Moberly violated the Texas Constitution, the Fifth and Fourteenth Amendments to the United States Constitution, and Texas state tort laws when they utilized inaccurate, erroneous, and falsified information when they reviewed him for parole or mandatory supervision. He also seeks a declaration that Defendants Williams, Propes, and Burton similarly violated the law when they failed to intervene. Plaintiff also appears to seek the judicial review of his parole. Plaintiff also requests monetary damages for his alleged unlawful incarceration from

2007-2014, in the amount of $25,000 per year, $80,000 from Defendants LaFavers, Shipman, and Moberly for emotional injuries, $55,000 from Defendants Williams, Propes, and Burton for emotional injuries, $25,000 in punitive damages from each Defendants LaFavers, Shipman, and Moberly, $15,000 in punitive damages from each Defendants Williams, Propes, and Burton. Finally, with regard to injunctive relief, Plaintiff requests the Court order a parole review process after the deletion of the "information(s) cited in Section 41, p. 15 of Plaintiff's Complaint."[1]

## DISCUSSION AND ANALYSIS

A.  Standard Under 28 U.S.C. § 1915(e)

An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. Haines v. Kerner, 404 U.S. 519 (1972). However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog

---

[1] This section of Plaintiff's complaint provides:

Components (2D, and 9D1, 92D); VIOLENT CRIMINAL ACTS INDICATING A CONSCIOUS DISREGUARD [SIC] FOR THE LIVES, SAFETY, OR PROPERTY OF OTHERS; OR THE INSTANT OFFENSE OR PATTERN OF CRIMINAL ACTIVITY HAS ELEMENTS OF BRUTALITY, VIOLENCE OR SELECTION OF VICTIM'S VULNERABILITY SUCH THAT THE INMATE POSES A CONTINUED THREAT TO THE PUBLIC SAFETY; OR THE RECORD INDICATES THE ['USE OF A WEAPON" . . . ], and/or 1D: THE RECORD INDICATES THAT THE INMATE IS A LEADER OR ACTIVE PARTICIPANT IN GANG OR ORGANIZED CRIMINAL ACTIVITY.

...

just produce

the judicial machinery with meritless litigation and abuse already overloaded court dockets." Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

  B. Eleventh Amendment Immunity

Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. Pennhurst State School Hosp. v. Halderman, 465 U.S. 89 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. Port Auth. Trans-Hudson v. Feeney, 495 U.S. 299, 304 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. Green v. State Bar of Texas, 27 F.3d 1083,1087 (5th Cir. 1994).

  C. Absolute Immunity

Defendants LaFavers, Shipman, and Moberly are also protected from the claims Plaintiff brings against them in their individual capacities for monetary damages by the doctrine of absolute immunity. See Littles v. Board of Pardons and Paroles Div., 68 F.3d 122, 123 (5th Cir. 1995). Parole officers are entitled to absolute immunity from liability for their conduct in parole decisions and in the exercise of their decision-making powers. Id.

  D. Heck v. Humphrey

Insofar as Plaintiff is seeking monetary damages against Defendants in their individual capacities for his alleged illegal confinement, Plaintiff's claims must also be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) and the Fifth Circuit's application of Heck to state

prisoner § 1983 lawsuits in <u>Boyd v. Biggers</u>, 31 F.3d 279 (5th Cir. 1994). In <u>Heck</u>, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

In this case Plaintiff does not allege that his conviction or denial of parole or mandatory supervision has been reversed, expunged, invalidated, or called into question by a federal court's issuance of writ of habeas corpus. Plaintiff's recitation of the procedural history in this case indicates just the opposite. Accordingly, Plaintiff's claims for monetary damages regarding his alleged illegal confinement should be dismissed without prejudice to refile once the conditions of <u>Heck</u> are met. Plaintiff should be allowed to refile only upon a showing that the decision to deny his parole or mandatory supervision "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Heck</u>, 512 U.S. at 486-87.

    E.    <u>Fifth Amendment</u>

Plaintiff's claim under the Fifth Amendment fail because Plaintiff sues only state actors. The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor. <u>See Jones v. City of Jackson</u>, 203 F.3d 875, 880 (5th Cir. 2000).

    F.    <u>Fourteenth Amendment - Parole</u>

Plaintiff's claims under the Fourteenth Amendment challenging the denial of his parole also fail. As explained by the Fifth Circuit, "[t]he protections of the Due Process Clause are only invoked

6

when State procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest." Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir.), cert. denied, 522 U.S. 995 (1997) (citations omitted). Because Texas prisoners have no protected liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds. Id. (citations omitted). In Johnson, the Fifth Circuit concluded Johnson's allegations that the Texas Board of Pardons and Paroles considers unreliable or even false information in making parole determinations, without more, simply do not assert a federal constitutional violation. Id. "[I]n the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause." Id. at 309 n.13. Because Plaintiff has no liberty interest in obtaining parole in Texas, he has no claim for violation of due process in the procedures attendant to his parole decisions. Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir.1995).

  G. Fourteenth Amendment - Mandatory Supervision

  In addition to challenging the denial of parole, Plaintiff also challenges the denial of discretionary mandatory supervision. "Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T. CODE § 508.001(5). Whereas an inmate's release on parole is wholly discretionary, an inmate's release on mandatory supervision is required, subject to certain exceptions,[2] when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Id. at §

---

[2] Section 508.149(b) provides that "[a]n inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." Id. § 508.149(b).

508.147(a); Jackson v. Johnson, 475 F.3d 261, 263, n. 1 (5th Cir. 2007). As a matter of state law, good and work time credits apply only to eligibility for parole or mandatory supervision and do not otherwise have any effect on the length of sentence imposed on an inmate. See Ex parte Hallmark, 883 S.W.2d 672, 674 (Tex. Crim. App.1994); TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2004).

Both the Fifth Circuit and the Texas courts have held Texas's post-September 1, 1996 mandatory supervision scheme (outlined above) does create a protected liberty interest. Teague v. Quarterman, 482 F.3d 769, 777 (5th Cir. 2007); Ex parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000). Therefore, Plaintiff is correct in noting he has a protected liberty interest, and is entitled to due process protection with respect to the decisions to deny him mandatory supervision. However, this simply means certain procedural due process protections must be afforded Plaintiff by the Board before it decides whether to release him on mandatory supervision. Procedural due process requires, essentially, that Plaintiff be given notice and a meaningful opportunity to be heard. Geiken, 28 S.W.3d at 560. Additionally, if release is denied, "the inmate must be informed in what respects he falls short of qualifying for early release." Id. (citing Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 16 (1979)).

Plaintiff has failed to show he was not provided timely notice that he was to be considered for mandatory supervision release, that he was not given a meaningful opportunity to tender information to the Board in support of his release, or that the Board failed to inform him in what respects he fell short of qualifying for early release. Plaintiff's allegations indicate he has previously received the process to which he was due under the law with regard to the denial of mandatory supervision and there is no reason to think he will not be afforded those same protections in the future.

The allegedly false information to which Plaintiff continually refers is actually the reasons Plaintiff was given for his denial of release to discretionary mandatory supervision. To the extent Plaintiff complains the Board's reasoning or the guidelines it follows are too vague or arbitrary, the Court of Criminal Appeals has considered this argument and rejected it. Geiken, 28 S.W.3d at 557. In Geiken, the applicant argued the statutory criteria directing the Board to evaluate the inmate's potential for rehabilitation and whether his release would endanger the public "are too vague to provide any guidance to the Board in making its decision and . . . this Court should, because of this vagueness, hold this portion of the statute unconstitutional." Id. The Court of Criminal Appeals rejected the argument, explaining the factors in question represent "valid concerns in making the release decision," and "are not so vague as to provide the Board with no guidance in their decision." Id. The Geiken court concluded, "The early release decision is necessarily subjective and cannot be limited to rigidly defined factors. In creating a parole or other early release system, 'the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority.'" Id. (citing Greenholtz, 442 U.S. at 8). Therefore, Plaintiff's constitutional challenge to the factors considered by the Board is without merit. As for the sufficiency of the denial explanations, the Fifth Circuit has upheld similar explanations in the mandatory supervision context, and the Board is not required to produce evidence in support of its decision. See Boss v. Quarterman, 552 F.3d 425, 428-29 (5th Cir. 2008) (holding the Due Process Clause does not require further explanation than the "paragraphs cut verbatim from the Parole Board's Directives."). Accordingly, Plaintiff has failed to state a federal claim upon which relief can be granted.

H. <u>Supplemental Jurisdiction</u>

Plaintiff also asserts state law claims. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because the dismissal of Plaintiff's federal claims is recommended, the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

<u>RECOMMENDATION</u>

It is therefore recommended that Plaintiff's claims brought against Defendants in their official capacities for monetary damages be dismissed without prejudice for want of jurisdiction, Plaintiff's claims brought against Defendants LaFavers, Shipman, and Moberly in their individual capacities for monetary damages be dismissed with prejudice as they are protected by absolute immunity, Plaintiff's claims brought against Defendants Williams, Propes, and Burton in their individual capacities for monetary damages be dismissed without prejudice to refile once the conditions of <u>Heck</u> are met, and Plaintiff's claims brought against Defendants in their official capacities for non-monetary relief be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e). It is further recommended that the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss Plaintiff's Motion for TRO and Preliminary Injunction.

It is further recommended that the Court include within its judgment a provision expressly and specifically warning Plaintiff that filing or pursuing any further frivolous lawsuits may result in

(a) the imposition of court costs pursuant to Section 1915(f); (b) the imposition of significant monetary sanctions pursuant to Fed. R. Civ. P. 11; (c) the imposition of an order barring Plaintiff from filing any lawsuits in this Court without first obtaining the permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit; or (d) the imposition of an order imposing some combination of these sanctions.

It is further recommended that Plaintiff should be warned that for causes of action which accrue after June 8, 1995, the Texas Department of Criminal Justice, upon receipt of a final order of a state or federal court that dismisses as frivolous or malicious a lawsuit brought by an inmate while the inmate was in the custody of the Department or confined in county jail awaiting transfer to the Department following conviction of a felony or revocation of community supervision, parole, or mandatory supervision, is authorized to forfeit (1) 60 days of an inmate's accrued good conduct time, if the Department has previously received one final order; (2) 120 days of an inmate's accrued good conduct time, if the Department has previously received two final orders; or (3) 180 days of an inmate's accrued good conduct time, if the Department has previously received three or more final orders. See, TEX. GOV'T CODE ANN. § 498.0045 (Vernon 1998).

It is further recommended that Plaintiff be warned that if Plaintiff files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

In the event this Report and Recommendation is accepted, adopted or approved, it is recommended that the Court direct the Clerk to e-mail a copy of its order and judgment to the TDCJ

- Office of the General Counsel and the Pro Se Clerk for the United States District Court for the Eastern District of Texas.

## OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc); Thomas v. Arn, 474 U.S. 140, 148 (1985); Rodriguez v. Bowen, 857 F.2d 275, 276-277 (5th Cir. 1988).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of May, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE